UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT E. YENDES, Jr. and <br> FRANKLIN E. GARRETT, Jr., <br><br> Plaintiffs, <br><br> v. <br><br> MARC McCULLOCH, *et al.*, <br><br> Defendants. | Civil No. 09cv1143-L(CAB) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

In this action brought under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Defendants, FBI agents and Assistant United States Attorneys, brought a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs filed an opposition and Defendants replied. For reasons which follow, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

In the operative complaint,[1] Plaintiffs allege that they organized a business venture in El

---

[1] This action was filed by each Plaintiff separately on May 27, 2009. On July 6, 2009 each Plaintiff filed an amended complaint. On September 4, 2009 Defendants filed a motion to dismiss. Upon noticing that the complaints were nearly identical, the court issued an order to show cause why the two actions should not be consolidated. Neither side objected to consolidation, but Plaintiffs requested leave to file an amended complaint. By order filed November 9, 2009, the court consolidated the actions and granted Plaintiffs' request. The Consolidated Complaint filed November 20, 2009 is the operative complaint in this action.

Centro, California whereby they intended to set up an "assistance clinic" for interested individuals over a three-day period to obtain proof of United States residency. (Consolidated Compl. ("Compl.") at 3 & Ex. B.) Plaintiffs maintain that their service was necessitated by events such as the Calexico Unified School District's refusal to give access to school to students who were unable to document their residency within the school district in the United States. (*Id.* at 3.) Plaintiffs learned from the local newspaper that one method to document one's residency was to provide a notarized statement of residency. (*Id.* at 3 & Ex. A.) Plaintiffs rented a conference room at Vacation Inn Motel in El Centro for a three-day period June 8 through 10, 2007 and hired notaries. They distributed 1,500 fliers and had an ad placed in the local Spanish-language newspaper. (*Id.* at 3-4 & Ex. B & C.) In exchange for $95.00, they offered notarized documentation of residency in the United States. (*Id.* Ex. B.) The fliers explained that this may be necessary because of the upcoming immigration reform. (*Id.*)

On June 5, 2007 Plaintiff Franklin E. Garrett, Jr. contacted Carmen Wolf of CWS Notary Seminars to obtain contact information for notaries for Plaintiff's event. The same day, Ms. Woolf contacted the FBI's El Centro Resident Agency. Based on Ms. Woolf's call and subsequent interview, FBI agents persuaded her to contact another person who then placed a telephone call to Mr. Garrett, which was monitored by the FBI without a warrant. (*Id.* at 4-5 & Ex. D.) The object of monitoring the call was to gather evidence in connection with Plaintiffs' venture, which the FBI suspected was an alien smuggling organization. (*Id.* Ex. D.)

On June 6, 2007 a stationary audio surveillance device was placed in Plaintiffs' conference room at Vacation Inn Motel without a warrant. (Compl. at 6.) On June 7, 2007 an FBI agent conducted surveillance of the motel, another agent tailed Plaintiff Albert E. Yendes, Jr., and his son as they ran errands in El Centro, and at approximately 6 p.m. an agent observed and confiscated one of Plaintiffs' fliers for the assistance clinic. (*Id.* at 7.) In the evening of the same day, Plaintiffs met with two notaries at the conference room in preparation for the three-day clinic, and they jointly prepared a Statement of Residency they intended to use. (*Id.* at 7 & Ex. F.) Two agents followed one of the notaries after the meeting, interviewed her, and "coerced her" into "participating in the consensual monitoring of Plaintiffs." (*Id.* at 7.)

The FBI prepared a plan dated June 7, 2007 with the advice and approval of two Assistant United States Attorneys.  (Compl. at 6-7 & Ex. I.)  The mission was "to conduct surveillance, interdict illegal aliens and obtain evidence that [Plaintiffs] are involved in facilitating illegal residency documents."  (*Id*.)  The anticipated outcome was "the arrest of identified illegal aliens, seizure of proceeds from the activity and the arrest of all identified participants to include [Plaintiffs]."  (*Id*.)

The operation, as planned, was to involve a team of several government agencies:  FBI, El Centro Police Department ("ECPD"), United States Border Patrol ("USBP") and Immigration and Customs Enforcement ("ICE").  (*Id*.)  On the morning of June 8, 2007, at the briefing before the operation, however, the ECPD did not attend, the USBP withdrew all but one agent, and ICE withdrew all of its agents.  (Compl. Ex. E.)  The operation was therefore conducted by the FBI alone with one USBP agent.

When Plaintiffs opened the clinic at 10:00 a.m. on June 8, 2007, an FBI surveillance agent entered the conference room and requested to take a copy of the Statement of Residency form.  (Compl. at 8-9.)  Plaintiffs suggest that the notary, whom the agents had followed and interviewed the previous day, used a monitoring device while in the conference room, because FBI's audio monitoring ceased when she left the conference room at 11:20 a.m.  (*Id*. at 9.)  From the FBI's perspective, the operation as conducted consisted of surveillance in and around the Vacation Inn Motel until approximately 1:30 p.m.  When it appeared that no one would be showing up to have their United States residency documented, the agents decided to approach Plaintiffs for an interview.  (Compl. Ex. E.)

At approximately 1:20 p.m., Plaintiffs and Mr. Yendes' son left the conference room and went to a restaurant.  (Compl. at 9.)  While they were gone, six armed agents entered the conference room, separated all persons, interrogated them and inspected the conference room.  When Plaintiffs and Mr. Yendes' son were returning to the conference room, they were "ambushed . . . in a rush" by six armed agents in street clothes.  The agents showed their badges, "bracketed" Plaintiffs and Mr. Yendes' son in a semi-circle, and directed the three men to go with them for questioning.  Mr. Yendes was taken upstairs in the hotel by two agents and was

questioned approximately thirty minutes, while Mr. Garrett was taken to the conference room by two other agents, where he was questioned for approximately one hour. (*Id.* at 9.) Plaintiffs allege they "were at no point at liberty to leave or to deny the Defendants' demands." (*Id.* at 10.) Subsequently, the FBI acknowledged that there was no evidence of any unlawful activity and closed the case file. (*Id.*)

In the operative complaint Plaintiffs allege violations of their Fourth and Fifth Amendment rights under *Bivens*, for which they seek damages. (Compl. at 19-23.)

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that Plaintiffs did not state a claim for any constitutional violation and if they did, Defendants are protected by qualified immunity. A Rule 12(b)(6) motion tests the sufficiency of the complaint.[2] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving

---

[2] In support of their opposition brief Plaintiffs filed copious exhibits, a Separate Statement of Material Facts and Notice of Filing of New Material. The facts contained therein are not included in the operative complaint and are not judicially noticeable. They are therefore beyond the scope of a Rule 12(b)(6) motion and will not be considered. *See Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *see also* Fed. R. Civ. Proc. 12(d).

party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Defendants urge the court to apply the pleading standard adopted in *Iqbal v. Ashcroft*, which held "that a complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted). Plaintiffs are proceeding *pro se*, however, and their operative complaint "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, __ F.3d __, 2010 WL 2947323 (9th Cir. Jul. 29, 2010), citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Because *Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [the courts] continue to construe *pro se* filings liberally." *Id*. This is particularly important where, as in the instant case, Plaintiffs are *pro se* litigants in a civil rights matter. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.").

Plaintiffs allege that they were seized when six armed agents ambushed them, separated them and escorted them to separate locations for questioning. (Compl. at 9-10, 20.) Plaintiffs were interrogated for approximately thirty minutes and one hour respectively and "were at no point at liberty to leave or to deny the Defendants' demands." (Compl. at 10.)

Law enforcement interrogations can fall into one of the three categories:

> First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, consensual exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may seize citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by reasonable suspicion. Finally, police stops may be full-scale

arrests. These stops, of course, are seizures, and must be supported by probable cause.

*Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (internal quotation marks and citations omitted). Because Plaintiffs allege that they were outnumbered by the agents, that the agents were armed, that Plaintiffs were taken by the agents each to a separate location to be interrogated, and that they were not free to leave, their encounter with the agents was not a consensual exchange. On the other hand, Plaintiffs do not allege,[3] and the underlying facts do not suggest, that they were arrested. Accordingly, the agents required reasonable suspicion to interrogate Plaintiffs in the manner described in the operative complaint.

> Articulating precisely what "reasonable suspicion" . . . mean[s] is not possible. [It is a] commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standard[ is] not readily or even usefully, reduced to a neat set of legal rules. We have described reasonable suspicion simply as a particularized and objective basis for suspecting the person stopped of criminal activity. . . . We have cautioned that [this] legal principle[ is] not [a] finely-tuned standard[], comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. [It is] instead [a] fluid concept[] that take[s its] substantive content from the particular context[] in which the standard[ is] being assessed. [¶] The principal components of a determination of reasonable suspicion . . . will be the events that occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion . . ..

*Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (internal quotation marks and citations omitted).

Up to the time of stopping Plaintiffs, Defendants had received a telephone call from Ms. Woolf and interviewed her, they listened in on Mr. Garrett's telephone conversation with a cooperating witness, followed Mr. Yendes on his errands, reviewed Plaintiffs' flier, monitored Plaintiffs' meeting in the conference room on the evening before the clinic and then interviewed one of the notaries, observed Plaintiffs' clinic for an entire morning, including listening in on the goings-on in the conference room, reviewed the Statement of Residency form, and interrogated individuals at the clinic. Although it appears that much of the information Defendants gathered

---

[3] Plaintiffs allege that they "were under *de facto* arrest." (Compl. at 2) (emphasis in original).)

during their investigation was innocuous, the contents of the fliers, stating that an immigration reform may be coming soon and encouraging individuals to document their United States residency, was sufficient to raise reasonable suspicion that Plaintiffs were involved in some sort of an immigration-related crime.  The fliers raised particular concerns that Plaintiffs were aiding illegal immigrants by creating potentially fraudulent documents.  It therefore warranted the agents' decision to investigate further by interviewing Plaintiffs.  Plaintiffs therefore did not state a claim for an unreasonable seizure under the Fourth Amendment.

In the alternative, even if Plaintiffs had alleged a seizure claim, qualified immunity shields Defendants from further litigation of the claim.

> The qualified immunity analysis involves two separate steps.  First, the court determines whether the facts show the officer's conduct violated a constitutional right.  If the alleged conduct did not violate a constitutional right, then the defendants are entitled to immunity and the claim must be dismissed.  However, if the alleged conduct did violate such a right, then the court must determine whether the right was clearly established at the time of the alleged unlawful action.  A right is clearly established if a reasonable official would understand that what he is doing violates that right.  If the right is not clearly established, then the officer is entitled to qualified immunity.

*Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009) (internal quotation marks and citations omitted).  The order in which these questions are addressed is left to the court's discretion. *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 818 (2009).  The inquiry whether the right was clearly established, "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . . The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), overruled on other grounds by *Pearson*, __ U.S. __, 129 S. Ct. 808.  Under the circumstances of this case and the state of the law as of June 2007, a reasonable officer would have believed that he had reasonable suspicion to interrogate Plaintiffs.  Defendants' motion to dismiss the Fourth Amendment claim based on Plaintiffs' interrogation is therefore **GRANTED**.

Even when a plaintiff does not request leave to amend the complaint, if the motion to dismiss is granted, the court must consider *sua sponte* whether to grant leave to amend.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 2004).

Rule 15 advises the court that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. *Id.* at 1052. Because the current allegations in the operative complaint negate the possibility that it could be amended so as to allege that Defendants did not act with reasonable suspicion when they interrogated Plaintiffs, **LEAVE TO AMEND IS DENIED**.

Next, Plaintiffs claim that they were subject to an unreasonable search because on June 6, 2007 the agents placed a stationary audio surveillance device in the conference room Plaintiffs had rented for the clinic. (Compl. at 6, 20.) To state a claim for an unreasonable search, Plaintiffs must show they had a "legitimate expectation of privacy" in the area under surveillance. *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). "To establish a 'legitimate' expectation of privacy, [a person] must demonstrate a subjective expectation that his activities would be private, and he must show that his expectation was 'one that society is prepared to recognize as reasonable.'" *Id.*, quoting *Bond v. United States*, 529 U.S. 334, 338 (2000).

In the evening on June 7, 2007, Plaintiffs had a meeting in the conference room in preparation for the clinic, which was to start the next morning. Defendants argue that Plaintiffs conceded in their opposition brief that they did not have an expectation of privacy. (Reply at 5-6.) The citation on which Defendants rely, however, is taken out of context. Their statement that they did not have an expectation of privacy was made in the context of addressing the reasonableness of the alleged seizure, when Plaintiffs were stopped and interrogated on June 8, 2007. (Opp'n at 15-16.) They discussed the intrusiveness of audio surveillance in a different part of their brief. (*See id.* at 21- 22.) Plaintiffs therefore have not conceded their privacy interest with respect to the surveillance claim.

A person may assert a Fourth Amendment privacy interest when his or her own premises or property are searched. *United States v. Taketa*, 923 F.2d 665, 670 (9th Cir. 1991); *see also id.*

at 677 (property interest a factor in assessing expectations of privacy). When, as here, the premises or property belonging to a third party are searched, a person may contest the search "if he had a reasonable expectation of privacy in the property based on a formal arrangement."[4] *Id*. at 671. For example, a person may have a reasonable expectation of privacy in a hotel room. *United States v. McIver*, 186 F.3d 1119, 1126 (9th Cir. 1999). In the employment context, a reasonable expectation of privacy exists in an area given over to an employee's exclusive use. *Taketa*, 923 F.2d at 671, 673. Even when visiting another person's hotel room for a brief business transaction, a person may have, to some extent, a reasonable expectation of privacy. *Nerber*, 222 F.3d at 603, 604 (audio surveillance inadmissible after informant left hotel room booked by law enforcement agents).

  Plaintiffs had rented a conference room and used it for a meeting in the evening on June 7, 2007. Their expectation of privacy was reasonable because they had a "formal arrangement" with the motel for their exclusive use of the room. The fact that Plaintiffs were having a meeting with two other individuals is not fatal, as "[p]rivacy does not require solitude." *Taketa*, 923 F.3d at 673. "[E]ven 'private' business offices are often subject to legitimate visits of coworkers, supervisors, and the public, without defeating the expectation of privacy unless the office is 'so open to fellow employees or the public that no expectation of privacy is reasonable.'" *Id*., quoting *O'Connor v. Ortega,* 480 U.S. 709, 717-18 (1987). Plaintiffs therefore had an expectation of privacy while using the room.

  Neither Plaintiffs nor any of Defendants' operation reports attached to the operative complaint suggest that either of the two notaries present at the meeting had previously consented to the surveillance. Absent the consent of at least one person in the room at the time of surveillance, "the government must obtain a warrant and satisfy the [federal wiretap] statute's stringent particularity requirements." *Nerber*, 222 F.3d at 604-05, citing 18 U.S.C. § 2511 &

---

  [4] A formal arrangement is not necessarily required. "[W]hat a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351-52 (1967). Accordingly, a person can have a legitimate expectation of privacy "in . . . an enclosed tent on public lands," *McIver*, 186 F.3d at 1126, and in a public phone booth, *Katz*, 389 U.S. 347 (reasonable expectation to not be heard and no reasonable expectation to not be seen).

2518 (footnotes omitted). Plaintiffs allege that the agents had not obtained a warrant. (Compl. at 6.)

The limitations in the wiretap statute, 18 U.S.C. §§ 2510-20, which "prohibits unauthorized aural interception of communications," *Taketa*, 923 F.2d at 675, "reflect a societal determination that the threat to liberty inherent in audio surveillance requires that this intrusive investigative technique be permitted only in limited circumstances." *Nerber*, 222 F.3d at 605 (citation omitted). The existence of the federal wiretap statute "is strong evidence that society is not prepared to accept the warrantless use of" audio surveillance. *Id*. Plaintiffs' expectation that they would not be under audio surveillance in their conference room was therefore "one that society is prepared to recognize as reasonable." *Bond*, 529 U.S. at 338. Plaintiffs' expectation of privacy was legitimate, especially when asserted against warrantless non-consensual audio surveillance. Accordingly, Plaintiffs have adequately alleged a claim for a Fourth Amendment violation by means of audio surveillance of the conference room on July 7, 2007.

Qualified immunity does not shield Defendants from further litigation of this claim. The law as is pertains to audio surveillance in the absence of consensual monitoring was well established prior to June 2007 as was the federal wiretap statute. *See* cases cited above. Based on the facts alleged in the operative complaint, a reasonable officer would not have believed that his conduct under the circumstances of this case was lawful. Defendants' motion to dismiss is **DENIED** with respect to the Fourth Amendment claim based in audio surveillance on June 7, 2007.

Plaintiffs were under audio surveillance also in the morning on July 8, 2007, when the conference room was open to the public to have their United States residency documented. As a matter of law, Plaintiffs had no legitimate expectation of privacy at that time. Recording, even video recording, "of suspects in public places . . . does not violate the fourth amendment; the police may record what they normally may view with the naked eye." *Taketa*, 923 F.2d at 677. Because video surveillance is "an even more intrusive investigative tool" than audio surveillance, *Nerber*, 222 F.3d at 605, law enforcement officers also can record what a member of the public may hear in a public place. *See also Katz*, 389 U.S. at 351 ("What a person

knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). Defendants' motion to dismiss the Fourth Amendment claim based on audio surveillance on June 8, 2007 is therefore **GRANTED**. Because it would be futile to amend the operative complaint with respect to this claim, it is dismissed **WITHOUT LEAVE TO AMEND**.

To the extent Plaintiffs base their Fourth Amendment claim on consensual monitoring, *i.e.*, voluntarily speaking to a person who consented to surveillance or agreed to report to the agents, their claim does not rise to the level of a Fourth Amendment violation. *See United States v. White*, 401 U.S. 745, 749 (1971) (the Fourth Amendment "affords no protection to a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it."), *quoted in Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 876 (9th Cir. 2008), *pet. for cert. granted*, 130 S. Ct. 1755 (Mar. 8, 2010). Defendants' motion to dismiss the Fourth Amendment claim based on consensual monitoring is **GRANTED WITHOUT LEAVE TO AMEND**.

Insofar as Plaintiffs claim that the consensual monitoring of Mr. Garrett's telephone conversation is a constitutional violation because it violated California statutes prohibiting monitoring of telephone conversations, they cannot state a claim. *See, e.g., United States v. Daniel*, 667 F.2d 783 (9th Cir. 1982); *see also Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 282 (1987). In the alternative, the doctrine of qualified immunity shields Defendants from further litigation of this claim, because a reasonable officer under the circumstances of this case would believe that consensual monitoring under federal law did not constitute a constitutional violation. *See Saucier*, 533 U.S. at 202. Defendants' motion to dismiss this claim is **GRANTED WITHOUT LEAVE TO AMEND**.

Plaintiffs also claim that Defendants violated their Fifth Amendment substantive due process rights by use of surveillance devices and consensual monitoring. (Compl. at 20-21.) This claim cannot be based on the Fifth Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting

*Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). The Fourth Amendment explicitly addresses government searches and seizures. *See* U.S. Const., amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause . . ..").  Plaintiffs' claim under the Fifth Amendment is therefore **DISMISSED WITHOUT LEAVE TO AMEND**.

To the extent Plaintiffs allege that their substantive due process rights under the Fifth Amendment were violated because the agents disrupted their business, Defendants' motion is **GRANTED**. The factual allegations in the operative complaint do not support a reasonable inference that Defendants precluded Plaintiffs from pursuing their chosen profession, as suggested in their opposition brief. (*See* Opp'n at 22.) Plaintiffs allege that their three-day clinic was disrupted and rendered inoperable, which caused them to lose money. (Compl. at 11, 12.) This does not support a Fifth Amendment claim. *See, e.g., W. Reserve Oil & Gas v. New*, 765 F.2d 1428, 1432-33 (9th Cir. 1985). Because the facts as alleged negate the possibility that Plaintiffs could amend the operative complaint to state a claim, **LEAVE TO AMEND IS DENIED**.

Plaintiffs also allege that their Fifth Amendment substantive due process rights were violated because the internal procedures for consensual monitoring were either non-existent or not accessible to the public. (Compl. at 21; *see also id*. at 13-15.) Plaintiffs, however, do not allege that the lack of access to the internal procedures was caused by any of the named Defendants. Even under liberal construction of the operative complaint, causation cannot be reasonably inferred from the factual allegations. Because causation is one of the requirements to state a claim for a constitutional violation, *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989), Ninth Cir. Model Civ. Jury Instr. 9.8, Plaintiffs have not stated a claim that their Fifth Amendment rights were violated by the lack of access to the internal procedures. This claim is therefore **DISMISSED**. Defendants addressed this claim only in the most superficial manner and did not provide a basis for the court to consider whether qualified immunity would shield them from further litigation of this claim if Plaintiffs were able to sufficiently allege it. The

court therefore declines to consider this issue at this time. Because it may be possible to allege additional facts to state a claim, Plaintiffs are granted **LEAVE TO AMEND**. If Plaintiffs choose to amend the operative complaint to re-allege this claim, and this claim is the subject of any further substantive motion, the parties must address the issue whether *Bivens* provides a basis for this type of claim at all. *See Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1947-48 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability to any new context or new category of defendants.").

Plaintiffs also maintain that their Fifth Amendment equal protection rights were violated because Defendants used separate internal procedures for consensual monitoring under "sensitive" circumstances, involving prominent public figures such as members of Congress, federal judges, certain members of the executive branch, state Governors, and other ranking government figures" (Compl. at 15), and "non-sensitive" circumstances involving non-prominent individuals, and because the internal procedures for "sensitive" circumstances were not inaccessible, but the procedures for "non-sensitive" circumstances were. (Compl. at 21-22; *see also id*. at 13-15.)

Governmental actions implicating the equal protection clause are scrutinized depending on the rights they affect. "Governmental actions that infringe upon a fundamental right receive strict scrutiny. However, government actions that do not affect fundamental rights or liberty interests and do not involve suspect classifications will be upheld if it they are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005) (citations omitted). What internal procedures to use for consensual monitoring does not warrant strict scrutiny because consensual monitoring does not implicate the suspect's Fourth Amendment rights. *See White*, 401 U.S. at 749. Furthermore, it is apparent that the distinction between "sensitive" and "non-sensitive" circumstances does not involve discrimination based on a suspect classification such as race or gender. Rational basis review therefore applies to Plaintiffs' equal protection claim. The rational basis test is met when the governmental action or procedure is "rationally related to a legitimate state interest." *Fields*, 427 F.3d at 1208. Plaintiffs do not allege that the distinction in internal procedures for consensual monitoring of

ranking government officials, as opposed to the public at large, is not rationally related to a legitimate state interest. Moreover, they did not allege that any of the named Defendants caused this distinction in internal procedures. Therefore they did not sufficiently allege their equal protection claim, thus warranting **DISMISSAL**. Again, Defendants did not specifically address this claim or the application of qualified immunity in this context. The court therefore does not consider whether qualified immunity would shield Defendants from further litigation of this claim if Plaintiffs adequately alleged it. Because it may be possible for Plaintiffs to allege additional facts in support of this claim, they are granted **LEAVE TO AMEND**. As with the preceding claim, should this claim come before the court again on a substantive motion, the parties must address the issue whether *Bivens* provides a basis for this type of claim.

Plaintiffs allege their Fifth Amendment equal protection rights were violated by selective prosecution. (Compl. at 16-17, 22.) "In our criminal justice system, the executive branch has broad discretion to decide whom to prosecute. . . . However, prosecutorial discretion is not unfettered, and selectivity in the enforcement of criminal laws is subject to constitutional constraints." *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (internal quotation marks and citations omitted). To state a claim for selective prosecution, a plaintiff must allege that "(1) other similarly situated individuals have not been prosecuted and (2) his prosecution was based on an impermissible motive." *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007). This standard is particularly demanding, requiring the claimant to overcome the presumption that the prosecutor has acted lawfully. *Id.* Plaintiffs cannot state a claim that they were selectively prosecuted first because they allege they were not prosecuted (Compl. at 10), and second because they have not alleged any impermissible motive. Defendants' motion to dismiss the selective prosecution claim is therefore **GRANTED WITHOUT LEAVE TO AMEND**.

Plaintiffs also claim they were selectively investigated, rather than prosecuted, in violation of the equal protection clause. Contrary to Defendants' characterization of this claim as violating a right to be free from *any* investigation, Plaintiffs claim that they have a constitutional right to be free from *selective* investigation. In this regard, Plaintiffs have not

alleged any impermissible motive or other facts relevant to the equal protection analysis. *See Fields*, 427 F.3d at 1208. That they were investigated when others similarly situated were not, without more, is insufficient to state a claim. Moreover, the fact that the investigation did not lead to any evidence of a crime, does not render the investigation actionable. "The constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Barker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, Plaintiffs did not sufficiently allege an equal protection claim based on selective investigation. On the other hand, this claim is not addressed by Defendants. The court therefore does not consider the issue whether Defendants would be shielded by qualified immunity if Plaintiffs could state a claim. Because it may be possible for Plaintiffs to state an equal protection claim, they are granted **LEAVE TO AMEND**. As with the other Fifth Amendment claims which were dismissed with leave to amend, should this claim come before the court again on a substantive motion, the parties must address the issue whether *Bivens* provides a basis.

To the extent Plaintiffs contend that the investigation was negligently conducted (*see, e.g.*, Compl. at 10, 11, 18 & 19), this is not sufficient to state a claim for a constitutional violation. It is well settled that "negligent acts do not incur constitutional liability." *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir.2002). Accordingly, Defendants' motion to dismiss this claim is **GRANTED WITHOUT LEAVE TO AMEND**.

Based on the foregoing, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' motion is **DENIED** with respect to the Fourth Amendment claim based on audio surveillance on June 7, 2007.

2. Plaintiffs' claims for (1) a Fifth Amendment substantive due process violation based on the fact that internal procedures for consensual monitoring are either non-existent or not available to the public; (2) a Fifth Amendment equal protection violation based on separate internal procedures for consensual monitoring under "sensitive" and "non-sensitive" circumstances; and (3) a Fifth Amendment equal protection claim based on selective

investigation are **DISMISSED WITH LEAVE TO AMEND**.  If Plaintiffs choose to amend the operative complaint with respect to any of these claims, and any of them comes before the court on a substantive motion, the parties must address whether *Bivens* provides a basis for the claim at all.

    3. All remaining claims are **DISMISSED WITH PREJUDICE**.

    4. If Plaintiffs choose to file an amended complaint, they must do so no later than **September 7, 2010**.  Defendants shall respond to the amended complaint, if any, within the time set forth in Federal Rule of Civil Procedure 15(a)(3).

    5. Plaintiffs' amended complaint, if any is filed, must be complete in itself without reference to a prior complaint.  *See* Civ. Loc. Rule 15.1.  Defendants not named and all claims not re-alleged in the amended complaint will be deemed to have been waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

**IT IS SO ORDERED**.

DATED: August 23, 2010

                                          M. James Lorenz
                                          United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL